Okay, our next case is number 19-11747, Maite Lopez v. The Commissioner of the Social Security Administration. Mr. Chermel. May it please the court, my name's David Chermel, and I represent the disability claimants in both Lopez and Perez. The clerk asked me to state at the top, by the way, the appellant will be arguing only the appointments clause issue, but Mr. Teplecki, my co-counsel, is available if the court has questions on the other issues. I want to start out with three crucial points which are not in dispute, but some courts, including the district court here and the two circuit courts SSA relies upon, missed. First uncontested point. It is uncontested between the parties that SSA's actions here were unconstitutional. That is not up for debate. The government admits it. Second, it is uncontested that the Supreme Court's decision in SIN holds that a claimant need not raise an issue to SSA's appeals counsel in order to preserve that issue for judicial review. Third, it is uncontested that there is no statutory or regulatory provision creating an issue exhaustion rule within SSA's hearing process. The Supreme Court said this explicitly in SIN at page 108, and SSA admitted this during the Circo litigation in the third circuit, page 153 of that decision. Based on these three uncontested points, the question which this court faces is whether it should judicially manufacture an ALJ level issue exhaustion rule in the disability context. We urge this court to exercise judicial restraint and not make policy by creating a judicially imposed ALJ level issue exhaustion rule which neither Congress nor SSA have seen fit to do since the 20 years have passed since the Supreme Court effectively invited them to create such a rule if they wanted to do so in SINs. It was the agency's decades of inaction since SINs was issued in creating an ALJ level issue exhaustion rule which was a key point for the Sixth Circuit and the Third Circuit in Ramsey and Circo in ruling for claimants on this issue. There are several specific reasons why this court should find that these severely mentally ill disability claimants did not forfeit their appointments clause challenges by not raising them before SSA's ERSAT's ALJs. The first point is the most important and I'm gonna spend the most time on it. And it's this. SSA hearings are informal and non-adversarial. This isn't my opinion. This is confirmed by agency policy and Supreme Court precedent. 404-900B of the regulations, SSR 13-1P and is twice confirmed by the Supreme Court in SINs and more recently in BSTEC. But that doesn't mean that you can't raise issues to an ALJ, right? We can raise issues. The question is whether we're required to in order to preserve them for judicial review. And let's state what SSA's position is. SSA's position is that disability hearings are the kind of non-adversarial and informal hearings at which you lose constitutional rights you do not affirmatively assert. Now I can't imagine a more formal proceeding than one at which you lose constitutional rights you don't affirmatively invoke. So it's this sui generis, non-adversarial and informal nature of disability hearings which distinguishes these disability cases from every non-SSA case such as LA Tucker which SSA relies upon. And it's the failure by the courts in the eighth and 10th circuits in Carr and Davis to even once recognize that disability hearings are informal which leaves those decisions fatally flawed. Well, one of those courts, Mr. Termal and I forget which one it was suggested that there is potentially a benefit to requiring exhaustion even in a non-adversarial scenario. And that is that if the commissioner learns that there are a lot of these issues being raised he or she may decide to take some remedial action. What is your response to that suggestion? Well, a couple of things about that. First of all, courts shouldn't be making policy. SSA has had two decades to put this into effect in the regulations they chose not to do so. I think that's key. I think the other part that's key is look at what Ramsey and Circo talk about regarding this. Even after the government was aware of its unconstitutional actions for many months thereafter the agency did not take corrective action. And let's look at the circuit law even in this circuit the recently unpublished decision in pharmacy doctors said, yes, we're gonna improve, we're gonna impose an issue exhaustion requirement in the DEA context. But in doing so this court emphasized that that's because the DEA is an adversarial context. If you look at this court's prior published decision in Mahone versus Department of Agriculture 485 F3RD 1247 1254 through 56. The analysis by the way is based on SINs, a disability case and it emphasized that it's because the setting was adversarial. By contrast, in disability hearings they are non-adversarial and they are informal. So the reason for imposing an issue exhaustion rule in the DEA context simply does not exist here. But also look at what SSA told these claimants. Judge Ms. O'Connor's decision in SINs her concurrence is the controlling one. And she said that courts must look closely at what the agency tells disability claimants. If you look at the Lopez transcript page 235 and 240 or the Perez transcript at 240, they told these severely mentally ill claimants that their hearings would be informal. Now the agency is saying those hearings were actually so formal that constitutional rights you didn't invoke were lost. That's not fair. Second reason, SSR 19-1P. This is SSA's own policy. Remember, the only issue here is ALJ level issue exhaustion. It is SSA's own purely retrospective policy as stated at page three of 19-1P that a claimant need not have raised an appointments clause challenge to the ALJ in order to obtain release. SSA cannot be allowed to argue for an ALJ level issue exhaustion rule which is contrary to its own stated policy on appointments clause challenges in 19-1P which was a purely retrospective ruling. Because by that time all of the judges had been properly appointed. Third point, the holding of LUCEA itself supports the claimant's position here. In LUCEA, the Supreme Court held that an appointments clause challenge was preserved even though it had never been raised before the ALJ. That's at 2050 of LUCEA. The court held that way even though SEC hearings are formal, adversarial, and have specific forfeiture rules. In the disability context, we're informal, non-adversarial, and have no specific forfeiture rules. So how could it be that it's preserved for the litigant in LUCEA even though he didn't raise it to the ALJ but my clients would have lost it by not raising it to the ALJ? It's incongruous. But counsel, how does this not create a situation where there's an appointments clause issue, you have the ALJ, and you sort of roll the dice as the claimant, and if you win, great, but if you lose, you later in the district court raise the appointments clause issue and you get a second bite at the apple? First of all, Your Honor, no one knew about this issue in the disability context. It was an absolute shock when this came out, almost none. And the one case they point to, Manback out of the Southern District of New York, that wasn't even a disability claimant. That was an attorney who was facing representative sanctions by the agency. No one was arguing this. It simply didn't exist almost at all. So it's not like people were sandbagging on this. And by the way, if the agency is concerned about sandbagging, go ahead and pass a reg that requires ALJ level issue exhaustion. But they've never done so, and they've had 20 years since since to do so. And this, Your Honor, your question gets into the point of futility as well, which is something that's been recognized. Two minutes, counsel, two minutes, two minutes. Twice in the disability context. Weinberger versus Southby, page 767. Matthews versus Eldridge, 329 through 30. The Supreme Court has twice recognized in the disability context that a claimant need not raise an issue to an administrative fact finder if doing so would have been futile. Three reasons why it was futile here. First, there was no validly appointed ALJ in the entire SSA system at the time these hearings occurred. So if my clients had said, can we have a properly appointed ALJ, that relief couldn't have been given. And second, SSA's own formerly secret policy statements, these emergency messages, which by the way, we had no access to, explicitly ordered the agency's ALJs to deny relief to any claimants who raised valid appointments clause challenges. And it's not even back then. To this day, there is still no SSA procedure allowing an ALJ to grant any appointments clause relief. Third and final point. As the courts in Circo and Ramsey noted, futility is proven because even after SSA had become aware of its unconstitutional actions, the agency still failed to take corrective action for many months thereafter. And I wanna close, Your Honors. SSA's actions here are admittedly unconstitutional. This court should not engage in policymaking and create a judicially imposed ALJ level issue exhaustion rule, which neither SSA nor Congress have seen fit to do in the 20 years since SINs. Like the courts in Ramsey and Circo, this court should exercise judicial restraint and it is the sui generis, informal, and non-adversarial nature of SSA disability hearings which drives this result. Before Mr. Zaltzman gets up, Mr. Toplicky, I wanted to ask you a question about Ms. Lopez's case unrelated to the appointments clause issue. Could you explain to me your argument about the ALJ failing to properly assess the claims of symptoms and limitations? Basically, you're talking about the subjective claims? Yes. Yeah, well, what happens over there is the judge pretty much just makes a paragraph saying that in considering the symptoms during this time must follow a two-step process and that he pretty much just says a board of the plate statement that says the claimant's statement concerning the intensity limitations not entirely consistent with the medical evidence and other evidence of record for the reasons explained in this decision. So he doesn't really actually point to anything that should take away from the credibility of the claimant. He just pretty much makes a board of the plate statement similar to what he did with the section C or paragraph C of the listing where he just said the person doesn't need it and that's it. What else would you have expected him or her to do? Well, there he should have basically pointed out to inconsistencies in basically her testimony or something to the effect where she says this but then she says that or something that's inconsistent basically with how she's living her life as opposed to how she's claiming that she's living her life. Something basically to point out as to why she's not credible. All right, thank you very much. I really appreciate it. You're welcome, Ron. Okay, Mr. Salzman, whenever you're ready. May it please the court, Joshua Salzman on behalf of the commissioner. I'll be addressing the appointments clause issue. I'm joined today by Ms. Shannon, official from the Social Security Administration who can answer any questions the panel may have about the remaining issues in the case. It's a bedrock principle of administrative law that arguments that aren't timely pressed before an administrative agency are not available on subsequent judicial review. That principle applies with full force to appointments clause claims and that it applies in Social Security Administration proceedings. For that reason, the judgment of the district court should be affirmed. Now, if you look at, I'm sorry, did I hear a question coming? No, I don't think so. Okay, apologies. So if you, let's start off with the first half of this. What are the two distinguishing features of this case that are highlighted? One possibility is this case involves an appointments clause claim. And the other possibility is that this involves proceeding before Social Security. Let's do the appointments clause half of that first. As this court recognized in Pharmacy Doctors and as numerous courts have recognized both before and after Lucia was decided, appointments clause claims are subject to ordinary principles of forfeiture. The fact that this is a structural separation of powers constitutional claim doesn't matter for purposes of forfeiture. Hold on one second. Let me ask you a question, please. Sure. Tell me how this thing would have played out had Ms. Lopez asserted her appointments clause claim. What would the ALJ have done given the administration's guidance? So two answers. I assume you're referring to the emergency messages. Two things about that. First, I think it's important to note that the emergency messages post-date the hearings for Ms. Lopez. She had her ALJ hearing, I believe it was in February of 2017. The first emergency message didn't come until January of 2018. But I think even more fundamentally, even if you set that chronology aside, I think the emergency messages actually support us in a critical way, which is that if you look at them, what those emergency messages direct the agency staff to do is to track Lucia claims. Now, why does that matter? That's very consonant with something that the Supreme Court has long recognized going back to its decision of LA Tucker in LA Tucker. And what LA Tucker teaches is that the agency is entitled to notice of its accumulating risk of potentially not taking corrective action. And as these emergency- Didn't the commissioner know that this was on the table at least when he or she issued the emergency measures? I'm not sure. It depends how you define on the table. By January of 2018, the Supreme Court had granted cert that the agency was going to be in the Supreme Court in Lucia. So there was certainly awareness out in the world that there were arguments being made about administrative law judges, at least the ones of the SEC, but some other agencies as well. That being said, you had this unsettled question and the agency certainly knew that there was going to be a Supreme Court decision with potential relevance, was interested in tracking that. But what the agency did not have notice of in January of 2018 was that folks were going to come and start pressing this argument in mass. At this time, nobody was making this argument before the agency. As I think it was your honor brought up earlier, the Eighth Circuit correctly recognized in the Davis decision that if the agency had started getting hundreds and thousands of claims in its proceeding, maybe the agency would have recognized in light of that risk, that it made sense to be more proactive and that the agency couldn't afford to let this play out and get further guidance from the Supreme Court before acting. But the agency always had the power. I'm sorry, your honor. What did the commissioner do after Lucia was decided? Quite promptly, within a matter of about eight weeks, the commissioner appointed the ALJs, which I think is quite significant because it underscores that the futility argument here just doesn't hold up. This is a problem that the agency always had the power to solve. Because ALJs are inferior officers, if anything, and not principal officers, they can be appointed by the relevant head of department, which here is the commissioner of social security. This was an issue the agency had the power to cure and had the power to cure with the stroke of a pen at any time. If, as L.A. Tucker indicates, the agent is appropriate, the agency had been given notice of its accumulating risk, then the agency could have acted to address that. But instead, people sat on their hands. Kelly, let me ask you a question related to that. You're not arguing that the ratification, when the commissioner appointed the ALJs after Lucia, you're not arguing that that subsequent ratification has an effect on this case, are you? Oh, no, absolutely not. We're only saying that that had prospective effect. We're not claiming that that would impact hearings that were held prior to July of 2018 when the appointment order was issued. But it does- Mr. Sussman, were any, to your knowledge, were any appointments clause claims preserved and made in any social security proceedings? Prior to the, certainly in through early 2018, I believe the number was zero. At some point, maybe in the immediate wake of Lucia, there started to be a small trickle, a small handful of claims that were being raised before the agency, but- And what did the agency do with those claims? So the agency developed a policy for addressing this that I believe Mr. Termal recognized. It's reflected in something called SSR 19-1P. And what the agency said it would do is grant relief. It would give new hearings, which I think underscores that the agency is being reasonable, and in fact, has been doing its best to respond to this issue when folks do what they're supposed to do, which is give the agency notice, which is what longstanding principles of administrative exhaustion suggest is required. The agency is giving relief. If you raise your claim before the agency, you do get relief under this policy that was issued right around the same time as the order. The agency promptly developed a policy and said, if you had a hearing before the ALJs were appointed, you get a new, and you raise the issue to the agency, you'll get a new hearing. But the folks who don't- Now, the ALJ, would the ALJ, I'm only at the ALJ level right now, okay? Would the, if a claim was, if an appointments clause claim was properly made and preserved, would the ALJ have had any authority to declare his or her appointment unconstitutional? I'm not gonna say that the ALJ had the ability. You're talking about, this is, we're talking, say, in 2017, when these folks had hearings. No, no, no, we'll talk about Ms. Lopez's case. Ms. Lopez, let me change the facts for you. Ms. Lopez asserts an appointments clause claim, right, in front of the ALJ. Yes. Would the ALJ, I'm not talking about the appeals council or the commissioner or the agency, would the ALJ have had the authority to declare his or her appointment unconstitutional under the appointments clause? I don't think the ALJ could have fixed this issue. I think the ALJ certainly could have flagged the issue, and- And then what happens? It goes to who? To the appeals council. So now let me ask you this question. Again, limited only to the appeals council. Would the appeals council have had power, constitutional authority, to declare the appointment of the ALJ unconstitutional? Again, I think what they had the power to do was to flag it and bring it to the attention of the commissioner. And it's the commissioner who had the power to actually fix this issue. And I think- A discretionary power, right? Well, to the extent that these folks are inferior officers, then I do think the commissioner would have ultimately had and wanted the agency to be able to continue to function. I think an appointment was eventually going to become necessary. But yes, I'd say it's a discretionary power, but the key thing here is that the agency had the power to address this issue. And I think the right frame of reference, and if you look at the L.A. Tucker opinion from the Supreme Court, it talks about the agency's entitlement to notice of its accumulating risk. The relevant unit to think about here is the agency writ large, not did the ALJ in particular have the ability to appoint himself or to declare himself unconstitutional. And when you look at it- What do you say in response to Mr. Chermel's argument that the Social Security Administration has not seen fit in two decades to create an administrative exhaustion requirement either by regulation or by going to Congress to create a statute? I'm glad you bring that up, because I actually think that the post-SIMS history helps us. So two things about SIMS. First of all, I want to emphasize that SIMS is just about the Appeals Council. It does not speak to what's required. It does not say that you don't need to exhaust before the agency at all. And if you look at page 107 of the majority opinion, the court is quite clear that it's not addressing the broader question of issue exhaustion outside of the Appeals Council. But the other thing I want to direct the court's attention to is what this case law developed as in the courts of appeals in the wake of SIMS. Because in the wake of SIMS, courts had to decide, does this extend to everything before the agency? And circuit after circuit held that SIMS only applies to the Appeals Council. So you have the First Circuit in a case called Mills v. Axel say that it would wreak havoc if we said that there's no exhaustion requirement at all in before Social Security Administration. The Eighth Circuit held the same thing in a case called Anderson. The Ninth Circuit held that in Shiby. So if you talk about what the agency should have been doing, the agency saw things playing out as the agency thought was appropriate, which is that courts of appeals were correctly continuing to apply issue exhaustion requirements in those administrative proceedings, consistent with background principles of administrative law. And to the extent that- But the agency has not, by rule, created an administrative exhaustion requirement. Is that correct? The agency has not required, has not developed a regulation that specifically addresses this. No, they have not. But again, I think some of this is a question of what your starting default premise is. And do you start from the premise of you should assume exhaustion requirement unless you hear otherwise? Or do you start from the premise that there is no issue exhaustion requirement unless one's imposed? And I think what L.A. Tucker teaches us, and case law subsequent to that, including this court's decision in Mahone, is that the background starting principle from an administrative law perspective is that an agency is entitled to notice that the administrative proceedings are not just a trial run, where folks can try to get relief and then save as a card in their back pocket some arguments that they can bring out on judicial review to get a do-over if they're unsuccessful before the agency. That's the danger of sandbagging. That's what, and if you don't have an exhaustion requirement, it really threatens the ability of the agency to function. It's important to bear in mind that SSA resolves millions of claims a year, conducts hundreds of thousands of ALJ proceedings every single year. And the Supreme Court long ago, in a case called Richardson v. Perales, said that we need to recognize that this is a system that needs to work, and that the rules have to be set up in a way that allows the agency to function in order to fulfill its mandate of providing hearings in all of these cases, and ensuring that folks get the benefits that they're entitled to. And if you treat everything as a trial run, if you allow people to then on judicial- Counsel, two minutes, please, two minutes. Okay. If you treat it as just a trial run, and you allow arguments to be made for the first time on judicial review, and then you get to cut back to the front of the line, folks who've been waiting years for their first hearing have to wait a little longer because somebody chose not to make an argument the first time around, and either strategically held it back or belatedly decided- Mr. Saltzman, this is Jill Pyre. Isn't there a difference, though, between a constitutional claim and a claim, say, about the evidence that the ALJ relied on with respect to exhaustion? I don't think there is. I think that's what Pharmacy Doctors teaches. That's what the Second Circuit has a recent decision called the GANELLA. It's mentioned in the 28-J letter response that we put in over the weekend, and that'll collect a lot of the relevant authority on this. But to the extent that you do think- What about our case of Loudermilk v. Barnhart? Sure. Well, Loudermilk is a jurisdictional holding. Loudermilk says that the court had jurisdiction to consider the argument, and we don't disagree that the court had jurisdiction. This isn't a jurisdictional defect. This is just a separate problem, which is the failure to exhaust, which is separate. As FriTag, for example, teaches, that it's not an appointments clause. Failure to raise an appointments clause issue does not create a jurisdictional problem. But it's still, you would only excuse that in some kind of rare case. And this is certainly not a rare case. There are literally thousands of these cases that have been brought in district courts across the country. And but for the fact that the overwhelming majority of district courts correctly rejected these claims at the outset, God only knows how many there could have been. Keep in mind, if a plaintiff's argument were accepted, roughly many hundreds of thousands of decisions, probably two full years worth of adjudications. So you're talking about 900,000 or a million cases in any one of those. All that somebody would have to do is go to district court, say the word Lucia, and get a new hearing. That's their argument, because nobody- Counsel, what about opposing counsel's argument that Lucia was a shock to the system, that nobody was expecting an appointments clause issue in the disability arena? So a couple things about that. In Pharmacy Doctors, this court correctly rejected the argument that you didn't need to have notice that one of these arguments wasn't available until Lucia. And that's something that other courts of appeals have correctly recognized as well, that it was possible to raise this argument before there was authority in your favor. If there was an open question of law on the issue, you had the ability to raise the argument. The other thing I'd point out is somebody, there is the Manback case that we cite in our brief, I think, that was referenced by Mr. Termal. Somebody raised an appointments clause challenge to an SSA ALJ. I think it was back in 2015. So it certainly wasn't impossible to make this argument. Though the argument got stronger, there was better authority on your side after Lucia was decided. But litigants are required to raise arguments before the Supreme Court gives you the best authority you could have. There was certainly no controlling precedent going the other direction. So I don't think you can excuse it on that basis. I see that I'm coming to the outer edge of my time. So I do wanna sum up briefly, but I wanna see if the court has any further questions on this. Okay, in that case, I just wanna emphasize again that we need a system that works. Their rule has no limiting principle. They say, essentially, that there are no distinguishing features of this case and that in the immediate wake of Lucia, anybody who received a hearing in 2016, 2017, or 2018 likely would have been able to go to court and get a new hearing. That's just not consistent with sound administration or sound judicial application of background principles of forfeiture. We'd accordingly urge you to affirm. How many, if you're talking about the heavens opening up, if their principle is adopted, Mr. Saltzman, how many of these cases are you facing in the pipeline? So today, I'm not gonna tell you the sky's gonna fall today. Right now, my understanding is there are about three dozen cases left in this circuit, but I don't think the right vantage point is to think about it today. You're reviewing a decision that was issued by the district court in March of 2019, and in March of 2019, there was an absolutely legitimate concern that tens or hundreds of thousands of cases would be unsettled if there was no administrative exhaustion applied here, and I think that's one of the mistakes the Third Circuit made in Serco, that they looked at it not from the perspective of what was the right rule in the immediate wake of the decision when the district courts were first being confronted with this, but was using the benefit of the fact that district courts had blunted the effect of the ruling by largely rejecting these kinds of claims and saying, well, now that we have the benefit of hindsight and the benefit of the fact that the district courts have mostly rejected this and stemmed the tide, now it's only a few hundred cases left in the system, so it's safe to rule for the plaintiffs, but you're deciding what the rule should have been back in 2018 and 2019, and at that time, there absolutely were tens or hundreds of thousands of cases potentially at issue. Now, are you able to answer questions related to Ms. Lopez's case aside from the Appointments Clause issue, or should I direct that question to Ms. Fischel? Please direct that to Ms. Fischel, thank you. Okay, Ms. Fischel, good morning. Good morning, Judge and Official, on behalf of the Commission. It's the same question I had for Mr. Teplicky, and that is, could you please respond to Ms. Lopez's argument that the ALJ failed to properly assess the subjective claims of symptoms and limitations? Of course, the ALJ here clearly addressed her claims. He laid out her claims in the beginning of the decision, and he noted that they were inconsistent with a lot of the evidence of record. And then throughout the decision, he pointed out those inconsistencies, including her own report to the improvement with medication, as well as her doctor's notes indicating that her subjective reports to her doctor were a little bit exaggerated with the doctor's own findings. And I don't think that the ALJ needed to do an express point-by-point paragraph responding specifically to her subjective complaints. I think the decision read as a whole is adequate to show that the ALJ considered these, and that the ALJ findings are supported by substantial evidence. You think the ALJ pointed out the inconsistencies elsewhere in the order? Yes, Your Honor, I think so. The ALJ went through the evidence, went through her treatment history, and a lot of her reports were similar to what Dr. Mowerman's opinion indicated. And so the ALJ kind of laid that out and explained why both her reports and Dr. Mowerman's opinion were inconsistent with this treatment history and this other evidence of record. And again, the decision should be read as a whole, and we're looking for whether or not it's supported by substantial evidence. And the ALJ did specifically identify that her subjective complaints were inconsistent with the record as a whole. So I think the ALJ complied with the regulations and that the findings are supported by substantial evidence. All right, thank you very much, Ms. Fischel. Mr. Turbel, you've got your time left for rebuttal. Your Honor, I wanna start out with this point, which I think is crucial. SSA continues to flee from the fact that disability hearings are informal as a matter of law. The agency will not even address the fact that they sent these severely mentally ill disability claimants notices telling them that their hearing is informal. And now the government's in federal court saying those hearings were actually so formal that you lost constitutional rights you did not specifically assert. That's not fair, it's disturbing. SSA's arguments failed to deal with the sui generis, informal and non-adversarial nature of disability hearings. Next crucial point, they're accumulating risk theory. That's one of their big things based on LA Tucker, which is not a disability case. It's not even an appointments clause case. It's been rejected twice in the disability context. Matthews versus Eldridge 329 through 30, a Supreme Court decision, and the Supreme Court again in Sims pages 108 through 110. The third circuit in Circo recognized this point. Third, let's forget about the two decades since Sims where you're talking about accumulating litigation risks, forget about appointments clause, how about every single possible issue in the world? The agency has been well aware that they do not have a forfeiture rule at the ALJ level. Not only did they do nothing in the 20 years since Sims, they've done nothing in the two years since this appointment clause litigation has been going on. So if this were so existential, if the sky is falling, then why didn't the agency do anything? Because as the third circuit pointed out on Mr. Salzman's exact argument he offered today, the argument is pure hyperbole. That's a quote from Circo. Final point, your honor, I wanted to answer a question that was not answered squarely by counsel for SSA. And it's this, the Supreme Court has held in Califano versus Sanders page 109, that in the unique informal and non-adversarial context of social security disability adjudication, the availability of judicial review of constitutional questions is presumed. The agency has come forward with nothing to overcome that presumption. And I have nothing further, your honor. All right, thank you. If there's anything else you'd like to say, Mr. Termal, we have the next case, Ms. Perez's case, number 19-11660. And that one obviously also presents the appointments clause issue. So I don't know how you wanna handle the argument in that case. I don't know if you have more to say and whether or not Mr. Salzman has more to respond to. Well, your honor, I would say this. I mean, attorneys love to hear themselves speak, but it's the exact same attorneys. It's the exact same issue. We're gonna rest on our briefs on the non-Lucea issues. So I don't see a point in me repeating the exact same arguments again. I had my opportunity. He had his opportunity. I had my rebuttal. I don't think there's anything more to say. Okay, I wanna give you the opportunity to have five more minutes of argument if you want, and for Mr. Salzman to have the corresponding time in rebuttal. But if you don't wanna say anything else, that's perfectly fine. Well, what I'd rather do, your honor, if the government is gonna speak again is I'd rather have time for rebuttal. But again, I think we've- No, the government only gets to speak if you speak because you're the agent in Perez as well. I'm not gonna speak then, your honor. Okay, so then we will consider the appointments clause arguments made in the Lopez case, 19-11747 to carry over and apply to as applicable in number 19-11660, which is Perez versus the commissioner. Okay, with that, I think we are done because the last case that we had today, we are taking on the briefs. So we wanna thank counsel for their presentations. They were certainly very helpful to us, and I'm sure will be of great assistance to us as we try to figure out these cases. So we are in recess until tomorrow morning. Thank you very much, your honors. Thank you, your honors. Thank you. Thank you. Thank you.